UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HCW LLC,

        Plaintiff,

        v.                                            Case No. 20-C-1141

ALORICA CUSTOMER CARE INC.,

        Defendant.

---

## DECISION AND ORDER

---

Plaintiff HCW LLC filed this action in Brown County Circuit Court against Defendant Alorica Customer Care Inc., asserting claims of breach of lease, breach of the duty of good faith and fair dealing, declaratory judgment, and unjust enrichment. Alorica removed the action to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 and subsequently asserted counterclaims of breach of contract, breach of the duty of good faith and fair dealing, and misrepresentation and unfair practices under Wis. Stat. § 100.18. On March 17, 2022, HCW filed a motion for summary judgment as to Alorica's misrepresentation and unfair practices counterclaim only. Alorica filed a motion for summary judgment on March 29, 2022, as to all of HCW's claims. The Court heard oral argument on the motions on July 8, 2022. The motions are now ready for resolution.

## BACKGROUND

HCW is a Wisconsin limited liability company formed by Scott Smet, Chad Smet, and Paul Belschner. Def.'s Proposed Findings of Fact (DPFOF) ¶ 1, Dkt. No. 28. Paul Belschner is currently the sole member of HCW. *Id.* HCW is the owner of condominium units for commercial

office space within a building located at 301 North Adams Street, Green Bay, Wisconsin, commonly known as the Baylake City Center. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, Dkt. No. 40. Alorica is a Pennsylvania corporation that is a leading provider of business process and consumer satisfaction outsourcing solutions with global operations. DPFOF ¶ 2.

HCW and Alorica entered into a lease agreement on November 22, 2005. PPFOF ¶ 2. Under the agreement, Alorica agreed to rent Units 210, 220, 230, 240, 250, and 260 of the Baylake City Center, which comprised approximately 70,000 square feet of commercial space. DPFOF ¶ 3. The lease set forth an initial term of 62 months with an option for Alorica to extend the lease for two consecutive terms of five years each. *Id.* ¶ 4. It provided that Alorica would pay an annual rental amount of $970,200.00 for the first 14 months of the lease term and that rent would increase by 2% each year thereafter.

On December 1, 2010, HCW and Alorica extended the terms of the lease by entering into Amendment No. 1. *Id.* ¶ 6. Amendment No. 1 included provisions that amended the amount of rent payable under the lease and the definition and calculation of operating expenses payable under the lease. PPFOF ¶ 4.

On April 1, 2017, HCW and Alorica entered into Amendment No. 2 to the lease, which extended the lease for 60 months. DPFOF ¶ 12. Pursuant to Section 2 of Amendment No. 2, the rental space was reduced to 45,535 square feet comprised of Units 210, 240, 250, and 260. *Id.* ¶ 13. Although Units 220 and 230 were no longer included in the rentable square feet, the amendment allowed for their continued occupancy under certain conditions:

> Continued Occupancy of Units 220 and 230. Tenant shall have the right to occupy and utilize Units 220 and 230 of Baylake City Center Condominium (the "Give Back Space"), such Give Bank [sic] Space is depicted in **Exhibit A**, and which Give Back Space is currently, and shall continue to be, utilized and occupied by Tenant for purposes of a lunch room and two training rooms, without the payment of Rent or any additional charge, including, without limitation, Operating Expenses. Upon

completion of the Tenant Improvements (as defined below) and receipt of a certificate of occupancy, Tenant shall vacate the Give Back Space within fifteen (15) days. Furthermore, Tenant shall peacefully surrender the Give Back Space in the same condition as when Tenant took possession, casualty, condemnation and ordinary wear and tear expected. Tenant shall not be permitted to remove any additions or improvements to the Give Back Space, without Landlord's prior written consent. In the event Landlord consents to such removal, Tenant shall repair any damage caused by such removal and any addition or improvement not removed by Tenant shall be deemed abandoned and shall, thereupon, become the property of Landlord without compensation to Tenant.

Amendment No. 2, § 4, Dkt. No. 1-1 at 49–50. Section 5 of Amendment No. 2 described the tenant improvements:

> Landlord Contribution to Tenant Improvement Costs. Landlord shall contribute an amount not to exceed Two Hundred Thousand Dollars ($200,000.00) ("Build Out Allowance") toward the cost of certain tenant improvements to the Premises as described on **Exhibit B** attached hereto and incorporated herein by reference (collectively, "Tenant Improvements"), which shall be constructed by Smet Construction Services Corp., on behalf of Tenant but managed by Landlord[.] Tenant shall, at Tenant's sole expense, be liable for (i) any and all costs related to the Tenant Improvements in excess of the Build Out Allowance and (ii) the completion of any other tenant improvements made to the Premises and all costs related thereto. Upon completion of such Tenant Improvements, which shall be no later than December 31, 2018, the Rent for the Premises shall increase on such date by an amount equal to Twenty-five Cents ($0.25) per square foot per year and Rent shall continue to be adjusted as set forth in this Amendment for each Lease year thereafter. For example purposes only, if at the time of completion of the Tenant Improvements annual Rent is Eight and 97/100 Dollars ($8.97) per square foot, then annual Rent shall be immediately adjusted to Nine and 22/100 Dollars ($9.22) per square foot for the balance of the then Lease year and such annual Rent shall then be adjusted annually by two and one-half percent (2.5%) as set forth in Section 6 below. Any unused portion of Tenant Improvement costs shall be credited against rent.

Amendment No. 2, § 5, Dkt. No. 1-1 at 50. The parties agreed to an increased rental rate from approximately $7.55 per square foot under Amendment No. 1 to $8.75 per square foot under Amendment No. 2. DPFOF ¶ 14. Amendment No. 2 also granted Alorica an option for early termination of the lease as of March 31, 2020, upon six-months' notice, provided that Alorica was not in default under the lease. Amendment No. 2, § 10, Dkt. No. 1-1 at 51. In short, Alorica was

3

able to occupy the Give Back Space as a lunchroom and two training rooms rent-free until 15 days after the tenant improvements were completed; the tenant improvements were to be completed no later than December 31, 2018; HCW was to contribute up to $200,000.00 toward the costs associated with the tenant improvements; and Alorica would be liable for any additional costs beyond the $200,000.00.

The parties agree that they did not contemplate that Alorica would be able to occupy the Give Back Space indefinitely, PPFOF ¶ 10, but dispute when Alorica was required to vacate the space. HCW contends that the tenant improvements were to be completed by December 31, 2018, at which time Alorica would vacate the Give Back Space. PPFOF ¶ 9. It asserts that Alorica was responsible for providing the necessary standards and specifications to HCW to complete the tenant improvements but never provided the specifications. As a result, HCW could not complete the tenant improvements. *Id.* ¶ 12.

According to Alorica, Section 5 provided that the tenant improvements were to be completed, if at all, by December 31, 2018, but nothing in Amendment No. 2 required Alorica to vacate the Give Back Space by December 31, 2018, or prior to the completion of the tenant improvements. Def.'s Resp. to PPFOF ¶ 9, Dkt. No. 45. Alorica maintains that the parties agreed that Alorica could occupy the Give Back Space rent-free until HCW found a new tenant for the space, at which time the tenant improvements would be constructed. Despite its efforts, HCW never found a tenant to lease the Give Back Space. DPFOF ¶ 48.

In 2017 and 2018, Alorica repeatedly expressed an interest in moving forward with the tenant improvements because it was under the impression that HCW had secured a tenant for the Give Back Space. *Id.* ¶ 29. On October 25, 2018, Scott Smet sent a bid for tenant improvements to Alorica, with a total estimated cost of $198,126.00. *Id.* ¶ 31. By that time, it would have been

4

impossible to complete the tenant improvements by December 31, 2018. *Id.* Alorica asserts that HCW decided not to undergo tenant improvements when it understood that Alorica had no intention of holding HCW liable for breach of the lease agreement for failure to complete the improvements by December 31, 2018. *Id.* ¶ 32. HCW maintains that it did not undergo tenant improvements because Alorica never finalized the plans or gave HCW approval to commence the tenant improvements. Pl.'s Resp. to DPFOF ¶ 32, Dkt. No. 41. In February 2019, Alorica informed HCW that it no longer wished to proceed with the tenant improvements. PPFOF ¶ 14. No tenant improvements were ever constructed, DPFOF ¶ 19, and Alorica continued to occupy the Give Back Space without paying rent. PPFOF ¶ 15. HCW never demanded that Alorica provide the specifications for the tenant improvements or that Alorica vacate the Give Back Space. DPFOF ¶ 33.

On September 16, 2019, Alorica informed HCW of its intent to exercise its termination option to terminate the lease on March 31, 2020. PPFOF ¶ 16. HCW sent Alorica a notice of default on October 10, 2019. Pl.'s Resp. to DPFOF ¶ 54. It asserts that the early termination option was conditioned upon Alorica not being in default at the time it was exercised and that, at the time Alorica attempted to exercise its termination option, it was in default of the lease and Amendment No. 2 due to its failure to take the steps necessary to complete the tenant improvements and vacate the Give Back Space by December 31, 2018. PPFOF ¶¶ 17–18. Alorica vacated the premises on March 31, 2020. DPFOF ¶ 53.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence

5

Case 1:20-cv-01141-WCG   Filed 07/13/22   Page 5 of 10   Document 49

and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. HCW's Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing Claims

HCW asserts that Alorica breached the lease by failing to provide the standards and specifications necessary for HCW to complete the tenant improvements and by unilaterally determining that it would not move forward with the tenant improvements. It also contends that Alorica breached the duty of good faith and fair dealing by failing to pay rent for the Give Back Space following the execution of Amendment No. 2, despite Alorica's decision not to move forward with the tenant improvements. Alorica asserts that, under the plain terms of Amendment No. 2, it was entitled to occupy the Give Back Space rent-free, without limitation, until the tenant improvements were completed. Because the tenant improvements were never completed, Alorica argues, it was not required to vacate the space.

Wisconsin law governs this contract dispute. Interpretation of a contract presents a question of law. *Ehlinger v. Hauser*, 2010 WI 54, ¶ 47, 325 Wis. 2d 287, 785 N.W.2d 328. The

6

goal of contract interpretation is to "give effect to the parties' intentions." *Tufail v. Midwest Hospitality, LLC*, 2013 WI 62, ¶ 25, 348 Wis. 2d 631, 833 N.W.2d 586. With respect to a business contract, the plain and ordinary meaning of its terms are interpreted in "the manner that it would be understood by persons in the business to which the contract relates." *Columbia Propane, L.P. v. Wis. Gas Co.*, 2003 WI 38, ¶ 47, 261 Wis. 2d 70, 661 N.W.2d 776. There is a presumption that the parties' intent is evidenced by "the words they chose, if those words are unambiguous." *Tufail*, 348 Wis. 2d 631, ¶ 26. A provision is considered ambiguous "if it is fairly susceptible of more than one construction." *Mgm't Comp. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 177, 557 N.W.2d 67 (1996).

When the contract language is ambiguous, two rules apply: "(1) evidence extrinsic to the contract itself may be used to determine the parties' intent and (2) ambiguous contracts are interpreted against the drafter." *Seitzinger v. Cmty. Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426 (internal quotation marks and citations omitted). In interpreting an ambiguous contract provision, a court must select the construction that gives effect to each part of the contract and reject constructions resulting in surplusage or unfair or unreasonable results. *Wausau Joint Venture v. Redevelopment Auth. of City of Wausau*, 118 Wis. 2d 50, 58, 347 N.W.2d 604 (Ct. App. 1984) (internal citation omitted). The court "cannot insert what has been omitted or rewrite a contract made by the parties." *Levy v. Levy*, 130 Wis. 2d 523, 533, 388 N.W.2d 170 (1986).

"Every contract implies good faith and fair dealing between the parties to it." *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶ 12, 289 Wis. 2d 795, 714 N.W.2d 582 (citation omitted). There can be no breach of good faith and fair dealing, however, "where the contracting party complains of acts of the other party that are specifically authorized

7

in their agreement." *M & I Marshall & Ilsley Bank v. Schlueter*, 2002 WI App 313, ¶ 15, 258 Wis. 2d 865, 655 N.W.2d 521 (citation omitted); *see also Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 29, 348 Wis. 2d 360, 842 N.W.2d 240 ("A party may not . . . employ the good faith and fair dealing covenant to undo express terms of an agreement.").

Under the plain terms of Amendment No. 2, Alorica could occupy the Give Back Space rent-free until 15 days after the tenant improvements were completed. HCW maintains that Alorica breached the lease by failing to provide the standards and specifications necessary for HCW to complete the tenant improvements and by unilaterally determining that it would not move forward with the tenant improvements. Section 5 to Amendment No. 2 states that HCW will contribute up to $200,000.00 for tenant improvements, as described in Exhibit B. Amendment No. 2, § 5. It indicates that the tenant improvements "shall be constructed by Smet Construction Services Corp., on behalf of Tenant but managed by Landlord," and completed no later than December 31, 2018. *Id.* The requirement to vacate the Give Back Space was conditioned upon the completion of the tenant improvements. Although the amendment to the lease did not include a deadline by which Alorica was required to provide the specifications, implicit in the amendment is an obligation to provide them. But the way the parties subsequently interpreted the amendment and conducted themselves resulted in Alorica remaining in the Give Back Space beyond the time envisioned by the amendment.

The parties' conduct demonstrates that there was no deadline to provide the standards or urgency complete the tenant improvements. In the fall of 2018, it became apparent to both parties that the tenant improvements could not be completed by December 31, 2018. HCW asserts that the only reason it was unable to complete the tenant improvements was because Alorica never gave HCW approval to commence them. But HCW neither declared that Alorica was in breach

8

by failing to provide the specifications nor demanded that Alorica vacate or pay rent on the Give Back Space after December 31, 2018, even after Alorica advised in February 2018 that it no longer wished to proceed with the tenant improvements. HCW only sent a notice of default after Alorica sought to exercise the early termination provision of the amendment. Based on the parties' subsequent interpretation of the amendment and their conduct, Alorica did not violate any condition to constitute a breach. Accordingly, Alorica did not breach the lease agreement or the duty of good faith and fair dealing.

### B. HCW's Claim for Declaratory Judgment

HCW seeks a judgment declaring that Alorica's attempt to exercise the early termination option failed and declaring the lease to be enforceable against Alorica through the expiration of tis term on March 31, 2022, or through the date which the lease is properly terminated. Because Alorica did not breach the lease agreement, it was not in default at the time it exercised the early termination option. Accordingly, HCW's claim for declaratory judgment is dismissed.

### C. HCW's Unjust Enrichment Claim

HCW pleads a claim of unjust enrichment in the alternative to its breach of contract claim. Generally, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract." *Cont'l Cas. Co. v. Wis. Patients Comp. Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (Ct. App. 1991) (citing *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987)); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("Under that doctrine, a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative."). Here, there is no dispute that the parties have entered into a contract. Therefore, HCW's unjust enrichment claim must be dismissed.

### D. Alorica's Counterclaims

Alorica has asserted counterclaims of breach of contract, breach of the duty of good faith and fair dealing, and misrepresentation and unfair practices under Wis. Stat. § 100.18. As to its breach of contract counterclaim, Alorica alleges that, as a result of a roof leak on the premises, it suffered damage to property, costs to remediate the damage and destruction, related workers' compensation costs, lost profits, lost productivity, and business disruption. Alorica also asserts that HCW breached the duty of good faith and fair dealing by assuring Alorica that there would be no rent charged for the Give Back Space and then taking a contradictory position. It maintains that HCW's misrepresentations violate Wisconsin's Deceptive Trade Practices Act (DTPA), Wis. Stat. § 100.18. Alorica conceded at oral argument that dismissing HCW's claims disposes of Alorica's breach of the duty of good faith and fair dealing and DTPA counterclaims. Because Alorica's motion for summary judgment is granted and HCW's claims against Alorica are dismissed, Alorica's breach of the duty of good faith and fair dealing and DTPA counterclaims must also be dismissed.

### CONCLUSION

For these reasons, Alorica's motion for summary judgment (Dkt. No. 26) is **GRANTED**, and HCW's motion for partial summary judgment (Dkt. No. 24) is **DENIED as moot**. HCW's claims against Alorica are dismissed. All that remains is Alorica's breach of contract counterclaim. The Clerk is directed to set the matter on the Court's calendar for further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of July, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge